# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> KEVIN DAVID McGOVERN and CMG CONSTRUCTION, INC., <br><br> Defendants. | CR-16-44-GF-BMM <br><br><br> **ORDER ON DEFENDANTS' MOTION FOR NEW TRIAL** |

Defendants Kevin David McGovern and CMG Construction, Inc. ("McGovern") have moved for a new trial under Fed. R. Crim. P. Rule 33. (Doc. 83.) McGovern alleges the following bases for a new trial: the government constructively amended the Indictment; the government violated the Court's Pretrial Order regarding the use of MT Waterworks evidence; the Court denied the Defendants the right to present a full defense; and the government made an allegedly improper and prejudicial comment during closing rebuttal.

## BACKGROUND

A jury convicted McGovern on November 10, 2016 of Count 1: Conspiracy to Defraud the United States and the Chippewa Cree Tribe; Count 2: Scheme to Defraud the United States and Chippewa Cree Tribe/Wire; and Count 3: Bribery of

1

an Indian Tribal Government Official. (Doc. 62.) McGovern previously had served as the President and a principal owner of MT Waterworks, LLC ("MT Waterworks"), a company that pleaded guilty in 2016 to a Scheme to Defraud the Chippewa Cree Tribe/False Claim to Native American Preference and False and Fraudulent Statements Made to the United States. (Doc. 94 in CR-16-37-GF-BMM.)

## ANALYSIS

### a. Constructive Amendment of Indictment

McGovern asserts that the government constructively amended the Indictment by arguing during trial that MT Waterworks had facilitated bribes from McGovern to Tony Belcourt. (Doc. 84 at 19.) McGovern specifically argues that evidence the government offered to prove (1) the purpose of MT Waterworks, (2) the $91,800 distribution to Tony Belcourt from MT Waterworks, and (3) the buyout of Tony Belcourt impermissibly amended the Indictment.

McGovern argues that the government offered this evidence as direct evidence of guilt for conduct not alleged in the Indictment. McGovern further alleges that the transactions between MT Waterworks and Tony Belcourt that were offered as evidence of a bribery scheme by the government fell outside of the relevant time period stated in the Indictment. *Id.*

The government counters that McGovern conflates a variance of the Indictment with an amendment of the Indictment. (Doc. 89 at 4-5.) An amendment of the Indictment takes place "when the charging terms of the indictment are altered, either literally or in effect . . . ." Doc. 89 at 4, citing *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014). A variance occurs, however, when the government and/or the Court leave the charging terms unaltered, but present evidence to prove up conduct "materially different from [that] alleged in the indictment." Doc. 89 at 5, citing *Ward*, 747 F.3d at 1189-90. A constructive amendment requires automatic reversal, while a variance "is only grounds for reversal if [it] prejudices the substantial rights of the defendant." *Id.*

McGovern claims that the Indictment charges McGovern only with the $50,000 loan (alleged bribe) to Tony Belcourt and the $25,000 donation (alleged bribe) to the tribal events committee. (Doc. 84 at 8.) McGovern contends, therefore, that the MT Waterworks evidence offered by the government as direct evidence of bribes to Belcourt constituted a constructive amendment of the Indictment.

The government argues that neither it nor the Court altered the charging terms of the Indictment. The government offers in support the undisputed fact that McGovern's counsel agreed, and failed to object, to the jury instructions that incorporated the exact language of the Indictment. (Doc. 89 at 5.) The government

3

was also the only party to refer to the specific language of the Indictment in its closing arguments. (Doc. 82 at 267-270, 292.)

The government also distinguishes two cases cited by McGovern—*Choy* and *Stirone*. The government contends that the Court altered the charging terms of the Indictment in both cases through jury instructions. Doc. 89 at 6, citing *Stirone v. United States*, 361 U.S. 212, 214 (1960); *United States v. Choy*, 309 F.3d 602, 606 (9th Cir. 2002)., The Court in *Stirone* instructed the jury that it could find the defendant guilty of obstruction of interstate commerce based on the defendant's transportation of sand or steel across state lines. *Stirone*, 361 U.S. at 213-14. The indictment charged the defendant only with having transported sand across state lines. *Id.* The Court in *Choy* provided a clarifying instruction during jury deliberations that supported the government's unconventional bribery theory. *Choy*, 309 F.3d at 606-07. The Court determined that the combination of the government's unconventional theory and the Court's instruction had culminated in a prejudicial variance of the Indictment. *Id.*

The Court agrees with the government's position. The jury instructions simply incorporated the language of the Indictment. McGovern failed to object to the jury instructions that incorporated language of the Indictment. Fed. R. Crim. P. 30. The government exactly recited the Indictment charging language in its closing

argument. McGovern has failed to show that the government amended the Indictment.

The government responds to the claim of a variance by contending that Count 1 and Count 2 of the Indictment encompass the MT Waterworks evidence that it offered at trial. (Doc. 89 at 7.) The government quotes from the Indictment in stating that Count 1 and Count 2 encompass all financial favors from McGovern to tribal officials. Count 1 includes in the object of the conspiracy "payments, gratuities, loans, donations, or other financial favors" that McGovern gave to tribal officials. (Doc. 89 at 7, citing Doc. 1.) Count 2 includes "personal payments, gratuities, and financial favors for Tony James Belcourt and John Chance Houle." (Doc. 89 at 8, citing Doc. 1.)

McGovern claims, however, that the Indictment must have mentioned specifically the various payments from MT Waterworks to Tony Belcourt in order for the government to present them to the jury as direct evidence. (Doc. 84 at 22-23.) The government counters with citation to a Ninth Circuit case, *United States v. Rizk*, 660 F.3d 1125 (9th Cir. 2011).

The Court in *Rizk* recognized the latitude afforded to the government in presenting evidence of an alleged conspiracy similar to the type charged in Count 1 of the Indictment. The government in *Rizk* had introduced into evidence a summary chart pursuant to Fed. R. Evid. 1006 that depicted 96 fraudulent

mortgage transactions. The defendant had supplied inflated appraisals for 39 of the transactions. The Court nevertheless permitted the chart to be introduced to demonstrate the full scope of the alleged conspiracy. The Court reasoned that the government in a conspiracy case "may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *Rizk*, 660 F.3d at 1131.

The government argues, therefore, that it proves irrelevant whether the "overt acts" section of Count 1 of the Indictment specifically enumerated the MT Waterworks transactions. The "object of the conspiracy" section holds the most importance. The government introduced the MT Waterworks evidence to explain to the jury the full scope of the alleged conspiracy. McGovern had been a principal in MT Waterworks and certainly had knowledge of the alleged transactions that resulted in the disbursements from MT Waterworks to Belcourt. The introduction of this evidence failed to rise to the level of a variance of the Indictment.

McGovern further contends that the lack of specification in the Indictment regarding the MT Waterworks transactions failed to provide required notice of the crimes charged against McGovern. An Indictment must embody a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Civ. P. 7(c)(1). The Indictment in this case states that McGovern "had a significant financial interest in of [*sic*] MT Waterworks, LLC." (Doc. 1 at

6

3.) Once again McGovern had been a principal in MT Waterworks and would have possessed knowledge of the disbursements to Belcourt. The specific mention of MT Waterworks, paired with the pointedly broad language of Count 1 and Count 2, provided McGovern with adequate notice of the scope of alleged conduct.

McGovern further contends that the MT Waterworks evidence that the government presented to the jury falls outside the time period alleged in the Indictment. McGovern claims, therefore, that the presentation of this evidence constituted an amendment or prejudicial variance of the Indictment. (Doc. 84 at 23.) Count I and Count 2 of the Indictment allege a timeframe of December 2010 to January 19, 2012. (Doc. 1.)

The government claims that two payments presented to the jury occurred outside of this timeframe—the $91,800 used to repay the "loan" to Belcourt and the $500,000 buyout of Belcourt. (Doc. 89 at 12.) The government argues that McGovern failed to object to the admission of the $500,000 buyout during trial. *Id.* The government further claims that these two transactions did not constitute a variance of the Indictment. The government contends instead that the two transactions represented "the best evidence to demonstrate the value of MT Waterworks as a continuous financial favor to Tony Belcourt at the time he awarded contracts to Kevin McGovern." *Id.*

Aside from this primary theory of relevance, the government claims that the Court properly admitted evidence of the $91,800 distribution from MT Waterworks to Tony Belcourt because McGovern had opened the door to this evidence when claiming that the "loan" between Belcourt and McGovern had been legitimate. (Doc. 89 at n.13.) The government argues as an alternate theory of admissibility that the $500,000 buyout from MT Waterworks to Belcourt had been paid to keep Belcourt quiet. The government cites to *People of the Territory of Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985), for the proposition that offering to pay money to keep someone quiet should be admissible to prove consciousness of guilt.

The government's presentation of the two late MT Waterworks transactions does not constitute a variance of the Indictment. The government presented multiple other payments from MT Waterworks to Tony Belcourt that fell within the Indictment timeframe. (Doc. 89 at 12.) The two late transactions strengthened the government's theory that McGovern had promised future paybacks to Belcourt through MT Waterworks at the time of the awarding of the health clinic demolition contract to McGovern. These two payments also proved admissible on other grounds proffered by the government in that it helps establish consciousness of guilt. *Ojeda*, 758 F.2d at 408.

McGovern next claims that his exhibit of the grand jury transcript (Doc. 84-1), demonstrates that the government failed to present MT Waterworks evidence to the grand jury and thus falls outside the scope of the Indictment. (Doc. 84 at 9, 23-24.) The government responds that it may present evidence to the petit jury that it had not presented to the grand jury. Doc. 89 at n.2 citing *United States v. Avila*, 227 F. Supp. 3, 8 (N.D. Cal. 1963) ("The government is not limited at trial to evidence presented to the grand jury."). The government further claims that it did present MT Waterworks evidence to the grand jury. (Doc. 89 at n.2 citing Doc. 84-1 at 12, 25, 28-30). The Court agrees that the grand jury in fact did hear testimony regarding MT Waterworks, McGovern's involvement in it, and the movement of funds from MT Waterworks to Tony Belcourt.

McGovern lastly claims that the government failed to provide discovery regarding MT Waterworks. *Id.* The government responds that it provided McGovern's counsel with all MT Waterworks evidence in a separate, but concurrent case against MT Waterworks. (Doc. 89 at 13.) The government has filed this discovery under seal. (Doc. 90 "Exhibit F".) The government also claims that it "offered to walk defense counsel through the additional MT Waterworks documents during discovery meetings with McGovern's cases on two occasions," but that McGovern refused these meetings and the underlying discovery. (Doc. 89 at 13.)

The government presented several boxes of documents at the hearing that purportedly contained discovery related to MT Waterworks. The government also presented testimony from Special Agent Joseph Waller that he had made the MT Waterworks evidence available to McGovern and his counsel at several meetings. McGovern's counsel objected to Waller's representations. The Court notes, however, that McGovern's counsel previously had represented MT Waterworks (*United States v. MT Waterworks, LLC*, CR-16-37-GF-BMM), and presumably would have had access to MT Waterworks's records through this representation.

The Court agrees that the government has met its discovery burden with respect to MT Waterworks evidence, based on filed discovery and the two refused meetings. The Court ultimately determines, taking all these issues into account, that the government has not amended the Indictment, or subjected it to a prejudicial variance.

## b. Violation of the Court's Pretrial Order

McGovern claims that the Court prohibited the government from presenting the large majority of MT Waterworks evidence through its pretrial order. (Doc. 84 at 24.) McGovern alleges that the government violated the pretrial order by presenting evidence to prove that MT Waterworks served as a Native American front company and a vehicle to transfer bribes from McGovern to Tony Belcourt and other tribal officials. *Id.* at 24-27.

The Court's pretrial order explicitly allowed the government to present evidence concerning "the existence of Montana Waterworks and what [the] intent in forming it was, what its purpose was, who its principals were and what activities it engaged in." (Doc. 80 at 7-8.) The Court clarified this order during trial when it stated "my ruling related to evidence of MT Waterworks's conviction, the guilty plea in the case." (Doc. 81 at 99.) As explained in detail in the constructive amendment section above, the government did not need to give 404(b) notice for this evidence because it fell within the scope of the allegations in Count 1 and Count 2 of the Indictment. *See Loftis*, __, 2016 WL 7176657, *2.

Nothing in the Court's pretrial order prevented the government from presenting evidence to prove that MT Waterworks facilitated a bribery scheme. The pretrial order solely prohibited the introduction of MT Waterworks's prior convictions/plea agreement and prohibited any statement that MT Waterworks illegally had presented itself as a Indian-owned business. The government did not violate the Court's pretrial order regarding MT Waterworks.

## c. Right to Present a Full Defense

McGovern claims that the Court's rulings "excluding defense witnesses and preventing defense counsel from rebutting the government's closing argument" abrogated McGovern's right to present a full defense. (Doc. 84 at 27.) McGovern specifically points to: (1) the Court's warning that Attorney Filz's testimony would

11

likely open the door to the MT Waterworks conviction, and (2) the Court's warning to McGovern's counsel during closing that he was very close to opening the door to MT Waterworks's prior conviction. (Doc. 84 at 28-29.)

The government counters that the Court merely warned McGovern's counsel during the two above instances that the Rules of Evidence would allow the government to introduce the MT Waterworks conviction if McGovern continued to proclaim MT Waterworks's legitimacy. (Doc. 89 at 18.) The government further claims that the Court left the decision to call witnesses and present evidence to McGovern's counsel. *Id.* at 19. The government refers to McGovern's representations that he did not want to open the door to the introduction of MT Waterworks's prior conviction and accordingly would make his decision on what witnesses to call. (Doc. 82 at 189.)

The government points to the Court's warning to McGovern during closing argument to "stay away from [vouching for the legitimacy of MT Waterworks] unless you want to open the door." (Doc. 82 at 287-288.) The Court allowed McGovern to continue his closing and make several arguments regarding MT Waterworks. (Doc. 82 at 289, 291.)

The Court did not prohibit McGovern from presenting any evidence or calling any witnesses. The Court advised McGovern that the potential consequences of presenting certain evidence could include opening the door to the

introduction of MT Waterworks's prior conviction. McGovern made the strategic decision to omit these arguments and decline to call certain witnesses. McGovern presented his chosen defense in light of the realities of the Federal Rules of Evidence.

## **d. The Government's Rebuttal Closing Comment Regarding McGovern's Failure to Address MT Waterworks Evidence**

McGovern finally contends that the government improperly commented on MT Waterworks during rebuttal closing and that these comments affected the jury's verdict. McGovern specifically refers to the government's statement that "Mr. Butters wants to limit it just to those [two checks] because he doesn't want to talk about MT Waterworks and all of the money that was flowing in to Tony Belcourt." (Doc. 82 at 292.) McGovern argues that this statement requires the Court to hold a new trial, as "it appears more probable than not that the alleged misconduct affected the jury's verdict." Doc. 84 at 31, citing *United States v. Flake*, 746 F.2d 535, 541 (9th Cir. 1984).

The government notes first that McGovern failed to object to its statements during the rebuttal closing. Such a failure normally would waive any objection. Fed. R. Crim. P. 52(b). The Court may review this claim, however, pursuant to a plain error standard. *Johnson v. United States*, 520 U.S. 461, 467 (1997).

13

McGovern must establish that the error was "plain" and that the error affected his substantial rights. *Id.*

The government argues that it properly responded to McGovern's incorrect assertion that the case had been solely about two checks. (Doc. 89 at 26-27.) The government elaborates that McGovern opened the door to claims that he had been avoiding mention of MT Waterworks when he misled the jury to believe that the Indictment encompassed only two checks. *Id.* at 27. Even assuming that the government's comments constituted error, let alone plain error that affected McGovern's substantial rights, the Court concludes that the government's comment during closing rebuttal likely did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 at 467.

The jury had been presented otherwise ample evidence from which to convict McGovern. The government had presented testimony from numerous witnesses who had described the bribery scheme. The government also had presented financial records to document the illicit payments. McGovern had suggested several times during his closing that MT Waterworks had operated as a legitimate business. McGovern further had argued repeatedly that the government's case boiled down to the two checks addressed by Count 3 and Count 4. In fact, the government had presented evidence at trial that MT Waterworks had disbursed money to Belcourt on multiple occasions. Belcourt testified that he had

done no work for MT Waterworks to support the disbursements. The government agrees that this evidence supported the conspiracy and scheme to defraud alleged in Count 1 and Count 2. The Court declines to find plain error under these circumstances.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for a New Trial (Doc. 83), is **DENIED**.

DATED this 9th day of February, 2017.

Brian Morris
United States District Court Judge